1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP**
Michael J. Saltz, Esq.  SBN 189751
msaltz@jrsnd.com
Colby A. Petersen, Esq. SBN 274387
cpetersen@jrsnd.com
1880 Century Park East, Suite 900
Los Angeles, CA  90067
Telephone:  (310) 446-9900
Facsimile:   (310) 446-9909

Attorneys for Defendant ON-SITE MANAGER, INC.

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JOHNSON,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ON-SITE MANAGER, INC.,<br><br>　　　　Defendant. | Case No.: 5:15-CV-04409-BLF<br><br>**DEFENDANT ON-SITE MANAGER, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.**<br><br>**Complaint filed:  September 23, 2015**<br>**First Amended**<br>**Complaint filed:  January 5, 2016**<br>**Trial Date:       January 8, 2018**<br><br>Hearing Date:   August 24, 2017<br>Time:              9:00 a.m.<br>Courtroom.:     3<br>Judge:             Hon. Beth Labson Freeman |

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

**TABLE OF CONTENTS**

1.   INTRODUCTION ...................................................................................1

2.   FACTS ...................................................................................................2

    A.   PLAINTIFF'S ALLEGATIONS AGAINST ON-SITE IN HIS FIRST AMENDED COMPLAINT. ........................................................... 2

    B.   ACTUAL FACTS OF THE CASE AS SUPPORTED BY EVIDENCE. ............... 2

        1)   On-Site's Background and Procedures. ......................................... 2

        2)   The Issuance of the Preliminary Report and Final Report. ............................ 6

3.   LEGAL STANDARD FOR SUMMARY JUDGMENT ....................................9

    A.   ON-SITE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION FOR VIOLATION OF FCRA AS A MATTER OF LAW. ........................................................................ 10

        1)   FCRA Legal Framework............................................................ 10

        2)   There Is No Liability For Inaccuracies In A Consumer Report If A CRA Follows Reasonable Procedures To Assure Maximum Possible Accuracy. ........................................................................ 11

    B.   PLAINTIFF CANNOT SHOW ON-SITE FAILED TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY, THUS ENTITLING ON-SITE TO JUDGMENT AS A MATTER OF LAW. ................................................................. 12

    C.   ON-SITE'S PROCEDURES AS A RESELLER OF CONSUMER INFORMATION TO ASSURE MAXIMUM POSSIBLE ACCURACY ARE REASONABLE AS A MATTER OF LAW PURSUANT TO THE UNDISPUTED FACTS OF THIS CASE. ........................................ 13

        1)   The Standard of What is a "Reasonable Procedure" is Different for Reseller CRAs Than it is for Non-Reseller CRAs. .................................... 13

        2)   On-Site Has and Follows Reasonable Procedures as a Reseller to Assure Maximum Possible Accuracy in the Reporting of Information it Obtains from NCRAs. ................................................... 16

        3)   Under the Undisputed Facts of This Case, On-Site's Procedures to Assure Maximum Possible Accuracy as a Reseller Have Been Deemed to Be Reasonable As a Matter of Law. ............................................. 18

        4)   On-Site Is Entitled To Judgment As A Matter of Law Because Plaintiff Has No Evidence To Declare LexisNexis As A Disreputable Source For Public Record Information. ............................................ 19

        5)   Plaintiff Cannot Establish He Suffered Any Damages As A Direct Result Of On-Site's Conduct. ............................................ 21

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

       a.     Lost Housing Opportunities: ........................................... 22

       b.     Harm To Reputation:..................................................... 23

       c.     Emotional Distress Damages: ....................................... 23

   D.     PLAINTIFF CANNOT PRESENT ANY EVIDENCE THAT ON-SITE WILLFULLY VIOLATED FCRA. ........................................ 24

   E.     PLAINTIFF'S CCRAA CLAIMS FAIL ALONG WITH HIS FCRA CLAIMS... 25

5.   CONCLUSION ....................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Trans Union LLC,* 367 F.Supp.2d 1225 (W.D. Wis. 2005) ........................................ 12

*Anderson v. Trans Union, LLC*, 345 F. Supp. 2d 963 (W.D. Wisc. 2004) .............................. 20, 21

*Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600 (7th Cir. 2006) ..................................... 23

*Baker v. Experian Info. Solutions, Inc.*, 2015 U.S. Dist. LEXIS 82845 (C.D.Cal. June 22, 2015) ...................................................................................................................................... passim

*Bakker v. McKinnon*, 152 F.3d 1007 (8th Cir. 1998)................................................................ 24

*Boothe v. TRW Credit Data*, 768 F. Supp. 434 (S.D.N.Y. 1991) ............................................ 11

*Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982) ................................................................... 11

*Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) ......................... 11, 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................... 9, 10

*Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489 (D.N.J. 2010) ............................. 11

*Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001) .................................................. 22

*Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001)........................................... 12

*Dennis v. BEH-1, LLC*, 485 F.3d 443 (9th Cir. 2007) .............................................................. 20

*Gorman v. Experian Info. Sols., Inc.*, No. 07 Civ. 1846 (RPP), 2008 U.S. Dist. LEXIS 94083, 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) ......................................................................... 10

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) ...................................... 10

*Guimond v. Trans Union Credit Info., Co.*, 45 F.3d 1329 (9th Cir. 1995) ............................ 11, 25

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

*Hauser v. Equifax, Inc.*, 602 F.2d 811 (8th Cir. 1979) .................................................. 21

*Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994) ....................................... 20

*In re Oracle Corp. Secs. Litig.*, 627 F.3d 376 (9th Cir. 2010) ...................................... 10

*Ladner v. Equifax Credit Information Servs.*, 828 F. Supp. 427 (S.D. Miss. 1993) ...................... 11

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013) ...................................... 23

*Messano v. Experian Info. Solutions, Inc.*, 2017 U.S.Dist.LEXIS 70111 (N.D.Cal. May 8, 2017) 22

*Miller v. TransUnion, LLC*, 2013 U.S. Dist. LEXIS 140851 (M.D. Pa. Aug. 14, 2013) .............. 11

*Newfield v. City Nat'l Bank, NA,* 2017 U.S.Dist.LEXIS 46027 (C.D.Cal. Jan. 27, 2017) ............. 25

*Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099 (9th Cir. 2000) ........................... 9

*Northrop v. Hoffman of Simsbury, Inc.*, 12 F. App'x 44 (2d Cir. 2001) ........................................ 11

*Reed v. Experian Info. Solutions, Inc.*, 321 F.Supp.2d 1109 (D. Minn. 2004) ............................. 22

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009) ................................. 23, 25

*Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074 (D. Or. 2007) .................................................. 21

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ........................................... 10, 11, 24

*Sarver v. Experian Info. Solutions*, 390 F.3d 969 (7th Cir. 2004) ................................. 12, 21

*Schoendorf v. U.D. Registry, Inc.*, 97 Cal. App. 4th 227 (2002) ...................................... 25

*Serfess v. Equifax Credit Info. Servs.*, 2014 U.S. Dist. LEXIS 120138 (D.N.J. Aug. 28, 2014).... 20

*Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007) ........................................ 23

*Thompson v. San Antonio Retail Merch. Ass'n*, 682 F.2d 509 (5th Cir. 1982) ............................. 11

*Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824 (E.D.N.Y. 1994) ................. 11

**Statutes**

15 USC § 1681a(f) ........................................................................................................ 14, 15

15 USC § 1681a(u) ............................................................................................ 13, 14, 15, 16

15 USC § 1681e(b) .............................................................................................. 10, 12, 13

15 USC § 1681i ........................................................................................................... 16

15 USC § 1681i(f)(2)(B)(ii) ........................................................................................ 16

15 USC § 1681n ..................................................................................................... 11, 24

File No.: 5.385.011
Case No. Case No.: 5:15-CV-04409                                iv

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

15 USC § 1681o ................................................................................................ 11

16 C.F.R. pt. 607(3)(D) ..................................................................................... 20

*Cal Civ. Code* § 1785.14(b) ................................................................................ 25


**Other Authorities**

16 C.F.R. 600, § 607(b)(3)(A) .......................................................................... 21

FTC, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with
　　Summary of Interpretations 29, § 603(f) ............................................... 14, 15

Testimony of Timothy J. Muris, Chair, Federal Trade Commission, Before the Senate Banking
　　Committee (July 10, 2003) .................................................................... 15


**Rules**

*Fed. R. Civ. P.*, Rule 56(a) ................................................................................ 9

*Fed. R. Civ. P.*, Rule 56(e)(2) ........................................................................ 10

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1. INTRODUCTION

This case involves claims by Plaintiff Michael Johnson ("Plaintiff") against On-Site Manager, Inc. ("On-Site") after the denial of Plaintiff's rental application at River Pointe Apartments in Sacramento ("River Pointe"). Plaintiff claims that his rental application was denied because On-Site issued to River Pointe a tenant-screening report containing inaccuracies in violation of the Fair Credit Reporting Act under 15 USC § 1681 *et seq.* ("FCRA") and the California Consumer Credit Reporting Agencies Act under *Cal. Civ. Code* § 1785 *et seq.* ("CCRAA"). Plaintiff cannot prove the facts alleged in his First Amended Complaint ("FAC") [Docket No. 16] for the following reasons:

First, all of Plaintiff's claims fail as a matter of law because: (a) Plaintiff has no evidence that On-Site's procedures for assuring maximum possible accuracy are not reasonable; and (b) On-Site's procedures as a reseller to assure maximum possible accuracy are reasonable as a matter of law.

Second, On-Site is entitled to judgment as a matter of law because: (a) Plaintiff cannot present any evidence that he suffered any actual damage in any manner by the issuance of the Preliminary Report – the sole purpose of which was to protect Plaintiff from suffering any damage due to any inaccurate information being reported by a third party consumer reporting agency; and (b) Plaintiff was denied housing based upon his lack of income and his poor credit – not because of any alleged inaccuracy that did not appear in his Final Report.

Third, On-Site is entitled to judgment on Plaintiff's claim that On-Site willfully violated FCRA because Plaintiff cannot produce any evidence that On-Site acted intentionally to violate FCRA or acted in a reckless manner.

Finally, because Plaintiff's CCRAA claims mirror his FCRA claims, On-Site is entitled to judgment as a matter of law on said CCRAA claims for the same reasons On-Site is entitled to judgment on Plaintiff's FCRA claims. Thus, based upon the arguments contained herein, On-Site respectfully requests that this Court grant this Motion for Summary Judgment.

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

2. **FACTS**

    A. **PLAINTIFF'S ALLEGATIONS AGAINST ON-SITE IN HIS FIRST AMENDED COMPLAINT.**

Plaintiff claims that he is an individual who resides in West Sacramento, California. [FAC ¶ 4]. Plaintiff claims that Defendant On-Site Manager, Inc. ("On-Site") is a consumer reporting agency that provides background and tenant screening services. [FAC ¶ 5].

Plaintiff claims that in June 2015, he applied for housing at River Pointe. [FAC ¶ 10].  As such, River Pointe obtained a consumer report from On-Site. [FAC ¶ 10]. Plaintiff claims that said consumer report from On-Site contained inaccurate derogatory information about him. [FAC ¶ 6]. Specifically, Plaintiff claims that On-Site reported that Plaintiff was a party to a "civil action for possession" in which there was a judgment. [FAC ¶ 7].  No other information that was purportedly contained in said issued consumer report is identified as being inaccurate. [*See* FAC *passim*]. Plaintiff claims that, as a result of said inaccurate "civil action for possession" information, Plaintiff was denied housing at River Pointe and suffered actual damages and emotional distress. [FAC ¶¶ 10, 11].

Plaintiff then claims that On-Site issued said consumer report containing an inaccuracy by willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency pursuant to 15 USC § 1681e(b). [FAC ¶ 18].  Likewise, Plaintiff claims that On-Site issued said consumer report containing an inaccuracy by willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency pursuant to *Cal. Civ. Code* § 1785.14(b). [FAC ¶ 18].

    B. **ACTUAL FACTS OF THE CASE AS SUPPORTED BY EVIDENCE.**

Contrary to Plaintiff's unsupported allegations, the true facts in this matter are as follows:

    1) **On-Site's Background and Procedures.**

On-Site is a California Corporation that provides various services to the multi-family housing industry. [Joseph Davidson Declaration ("Davidson Decl.") ¶ 4]. Its customers consist of primarily property owners and management companies. [Davidson Decl. ¶ 4].  One of its primary services that it provides its customers is the collection of consumer data from various reputable consumer reporting agencies related to a particular rental applicant for the purpose of allowing its customers to review and evaluate said applicant's financial history, criminal record history, and rental history for

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

1   the purpose of determining if said applicant satisfies that particular customer's unique rental criteria.

2   [Davidson Decl. ¶ 4].

3          As such, On-Site is a consumer reporting agency ("CRA") that "assembles and merges

4   information contained in the database of another consumer reporting agency or multiple consumer

5   reporting agencies concerning any consumer for purposes of furnishing such information to any third

6   party," and does not "maintain a database of the assembled and merged information from which new

7   consumer reports are produced." [Davidson Decl. ¶ 5]. As such, On-Site is expressly a reseller of

8   other consumer reporting agencies' information under FCRA. [15 USC § 1681a(u); Davidson Decl. ¶

9   5].

10          On-Site performs no approval analysis or evaluation of any of the information it receives from

11   its third-party vendor CRAs and makes no decisions as to a consumer's eligibility or worthiness to

12   lease any property. [Davidson Decl. ¶ 6]. Rather, On-Site provides its customers with a computer

13   program "calculator" that allows them to pre-input their own personal criterion for the acceptance or

14   denial of rental applicants. [Davidson Decl. ¶ 6]. Said program then, completely on the customer's

15   side, takes the information On-Site acquires from various third-party vendor CRAs and compares it to

16   the consumer's pre-set criterion. The program then states whether the perspective rental applicant

17   satisfies or does not satisfy said personal criterion of the customer. [Davidson Decl. ¶ 6].  On-Site is

18   not involved at all in this process – it is entirely done by On-Site's customers at their own locations

19   *after* On-Site has provided said customers with a consumer report. [Davidson Decl. ¶ 6].

20          On-Site buys and resells consumer data and public record information from various reputable

21   CRAs such as Experian, Trans Union, Equifax and LexisNexis. [Davidson Decl. ¶ 7].   On-Site

22   requires its customers to provide On-Site with full identifying information of an applicant before any

23   consumer data is requested from On-Site's third-party CRAs, including a full name, full social

24   security number, Government issued identification number (e.g. Driver's License number), and prior

25   addresses. [Davidson Decl. ¶ 7].  On-Site then transmits this exact identifying information about the

26   applicant to the CRAs, which then search their own databases for consumer records associated with

27   such identifying information.   [Davidson Decl. ¶ 7].   On-Site then assembles and merges the

28   information returned from the CRAs that supplied consumer data on a particular rental applicant into

1  a single report that displays all of the information received from the CRAs. [Davidson Decl. ¶ 7].

2        As part of its reasonable procedures to assure maximum accuracy in the data it resells, On-

3  Site initially vets these third-party sources for accuracy before agreeing to use them as vendors.

4  [Davidson Decl. ¶ 9].  Further, On-Site continues to vet its consumer data vendors by repeatedly

5  testing the quality and accuracy of the data. [Davidson Decl. ¶ 9].  In addition, because On-Site

6  provides and sells multiple ancillary services to its customers when a rental applicant is accepted, On-

7  Site is greatly incentivized to assist rental applicants in getting accepted by its customers. [Davidson

8  Decl. ¶ 13].  As such, On-Site employs a Renter Relations group to respond to an applicant's

9  questions and help guide consumers through the dispute process with said vendors should any of their

10  information be incorrect. [Davidson Decl. ¶ 13].

11        Specifically, because On-Site is a reseller of consumer information solely in the possession of

12  a third-party CRA: On-Site has no relationship with the entities that provided such data to said CRAs;

13  no immediate or direct ability to verify the accuracy of the data provided by said CRAs; and no direct

14  ability to prevent those third-party CRAs from mixing or merging data exclusively under their

15  control. [Davidson Decl. ¶ 14].  What is more, On-Site is under contractual obligations with its third-

16  party CRA vendors to not store in any databases the data that it purchases from said CRAs.

17  [Davidson Decl. ¶ 14]. This is why On-Site goes above and beyond what is considered a "reasonable

18  procedure" to assure maximum possible accuracy in the industry and has implemented the following

19  program:

20        When an inquiry for consumer data comes in from a customer, On-Site will obtain consumer

21  information from its vendors in a "Preliminary Report" that it shares with the rental applicant for the

22  purpose of having the applicant review said information prior to that information being put into a

23  final report to be issued to On-Site's customer, upon which the customer will ultimately rely in order

24  to make a decision to accept or decline said applicant. [Davidson Decl. ¶ 15].  If a rental applicant

25  identifies any consumer data provided by the vendor CRAs that is incomplete or inaccurate during

26  the preliminary period, the rental applicant is told to contact On-Site's Renter Relations group with

27  documentation as to why said consumer information is incomplete or inaccurate so that On-Site may

28  pass such information along to the vendor CRA that reported such information and to have such

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel: 310.446.9900 • Fax 310.446.9909

information corrected so that said data does not find its way in to the Final Report upon which On-Site's customers will rely to make a final decision. [Davidson Decl. ¶ 16].

On-Site's customers are told not to rely upon, or make rental decisions upon, Preliminary Reports. [Davidson Decl. ¶ 17].   As such, consumers will not be damaged by incomplete or inaccurate information that is not under On-Site's direct control should the vendor CRAs report any. [Davidson Decl. ¶ 17]. Specifically, the Preliminary Report is designed to protect rental applicants from suffering erroneous denials of their applications as a result of possible erroneous information from a vendor CRA. [Davidson Decl. ¶ 18].   As such, On-Site has included the consumer's input as part of the gathering process of consumer information for the purposes of issuing a Final Report as part of its procedures to assure maximum possible accuracy and to otherwise shield and protect a rental applicant from being damaged by possible inaccurate or incomplete third-party data by making sure such possible inaccurate consumer information is not included in any Final Report. [Davidson Decl. ¶ 18]. These procedures far exceed that which is, and has been deemed, reasonable. [Davidson Decl. ¶ 19]. To the best of On-Site's knowledge of the tenant-screening market, On-Site is the only company that goes through the time and expense of taking such an extraordinary step to assure maximum possible accuracy in the consumer reports it issues. [Davidson Decl. ¶ 20].

What is more, when On-Site learns that a reported public record is not associated with a particular consumer, On-Site has a process by which it tags that record with a consumer's social security number so that it is able to prevent such record from appearing in any future reports for the consumer in the event that a third-party CRA continues to report consumer data that On-Site is on notice is possibly erroneous.  [Davidson Decl. ¶ 21].

On-Site issues approximately two million consumer reports per year that contain data On-Site receives from LexisNexis. [Davidson Decl. ¶ 22]. In contrast, On-Site receives approximately six thousand potentially meritorious disputes per year from rental applicants claiming that information being reported by LexisNexis is in some state of error. [Davidson Decl. ¶ 23]. That's an error rate of approximately 0.3%. [Davidson Decl. ¶ 24]. As such, the volume of such disputes is extremely low.

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

## 2) The Issuance of the Preliminary Report and Final Report.

In or about June 2015, Plaintiff applied to the River Pointe Apartments. River Pointe in turn requested rental-screening reports from On-Site. [Davidson Decl. ¶ 29, FAC ¶ 10]. During the application process, Plaintiff did not list Hurley Way in Sacramento as a prior address at which he previously resided. [Davidson Decl. ¶ 29; Caskey Decl. ¶ 4]. Rather, the only prior address that Plaintiff provided to be used by On-Site in requesting consumer information from various vendor CRAs was 2195 Valley Oak Lane in West Sacramento California. [Davidson Decl. ¶ 30; Caskey Decl. ¶ 5; Exb.1 (JOHNSON 5)]. As such, On-Site was not initially provided with the Hurley Way address at which Plaintiff eventually admitted he had previously resided – especially the street number and unit number. Therefore, such specific information was not available to be used in the identifying or excluding process of otherwise matching consumer data. [Davidson Decl. ¶ 30].

As part of the initial screening, On-Site requested records from LexisNexis, its public records vendor, which it re-sold to River Pointe in conjunction with a credit report from Equifax – one of its credit report vendors. [Davidson Decl. ¶ 31]. LexisNexis uses an algorithm that includes a search that looks for variations of names, including nicknames, to identify potential matches within a defined geographic area, and based thereon, returns data that matches said search algorithm when it possess public containing such available identifiers. [Davidson Decl. ¶ 32].

As part of On-Site's reasonable procedures to assure maximum possible accuracy and to include the rental applicant in the information gathering process as a source of information, a Preliminary Report was prepared in or about June 2015 that was not yet complete. [Davidson Decl. ¶ 38; Exb. 1 (JOHNSON 1-5)]. In fact, said Preliminary Report's summary specifically stated that certain information from certain CRA vendors was still "pending", and as such was a report that was not ready to be issued in its current form. [Davidson Decl. ¶ 39; Exb. 1, (JOHNSON 1)].

In any event, that Preliminary Report identified that LexisNexis found a "civil action for possession" filed by LeFever against a "Michael Johnson" in Sacramento, California. [Davidson Decl. ¶ 40; Exb. 1 (JOHNSON 1-5)].

The public court records associated with a civil action for possession do not contain any social security number (full or partial), nor do they contain a date of birth or other identification for the

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

1    defendant Michael Johnson. [Davidson Decl. ¶ 42]. Rather, the court records that were reported here

2    indicate that the address of the property was on Hurley Way in Sacramento, California. [Davidson

3    Decl. ¶ 42; Exb. 4]. The Preliminary Report also included a collection account from Equifax

4    involving LeFever dated February 2010. [Davidson Decl. ¶ 43; Exb. 1 (JOHNSON 3)]. The

5    collection account noted an original balance of $385, with a current balance of $0. Such information

6    therefore appeared to correspond with the "Civil Action for Possession" filed by LeFever in 2010

7    against a "Michael Johnson." [Davidson Decl. ¶ 44; Exb. 1 (JOHNSON 3)]. As such, there did not

8    appear to be any "patent error" on the face of the information that On-Site had received from

9    LexisNexis. [Davidson Decl. ¶ 44, Exb. 1 (JOHNSON 3)].

10        On or about June 9, 2015, On-Site sent Plaintiff a copy of the Preliminary Report. [Davidson

11   Decl. ¶ 45].  Plaintiff then spoke that day to On-Site's Renter Relations group, which informed

12   Plaintiff that there was a landlord-tenant filing, as well negative credit accounts on his credit report.

13   [Davidson Decl. ¶ 46].  On-Site then requested that Plaintiff provide it with documentation stating he

14   was not evicted and no outstanding balance was owed to LeFever so that On-Site could help Plaintiff

15   submit his dispute to the proper vendor and clear up any erroneous information. [Davidson Decl. ¶

16   46].  On-Site never heard back directly from Plaintiff. [Davidson Decl. ¶ 47].

17        Instead, later in June 2015, On-Site received documentation from River Pointe, which it in

18   turn had received from Plaintiff. [Davidson Decl. ¶ 48; Caskey Decl. ¶ 8].  The documentation

19   included rental history records for the Plaintiff, who previously held a lease with LeFever Mattson on

20   Hurley Way in Sacramento, California. [Davidson Decl. ¶ 49; Exb. 2 (JOHNSON 6-19)]. Those

21   rental history records confirmed that Plaintiff owed LeFever Mattson $385 at move out, the same

22   amount reflected in the collection account reported by Equifax. [Davidson Decl. ¶ 50; Exbs. 1-2

23   (JOHNSON 1-19)]. Further, said records show, however, that although Plaintiff Johnson also had

24   previously rented an apartment at the same street address as reflected in the landlord-tenant record,

25   the unit number and street number for Plaintiff was different from that of the "Michael Johnson"

26   identified in the "Civil Action for Possession." [Davidson Decl. ¶ 50; Exb. 2 (JOHNSON 6-19)].

27        It is important to note at this point that at no time did Plaintiff inform On-Site that any other

28   information in the Preliminary Report, other than the information from LexisNexis about the Civil

Action for Possession, was incomplete or inaccurate. [Davidson Decl. ¶ 51; Exb. 2 (JOHNSON 6-19)].   Moreover, at no time did Plaintiff provide On-Site, through River Pointe or otherwise, any documentation challenging any other consumer information in the Preliminary Report other than those documents challenging the LexisNexis information regarding said Civil Action for Possession. [Davidson Decl. ¶ 51; Exb. 2 (JOHNSON 6-19)].

On-Site's dispute procedures require On-Site to suppress a landlord-tenant court record if the applicant is not the person identified as the defendant in the action. [Davidson Decl. ¶ 52.   Thus, on the very same day On-Site received Plaintiff's information from River Pointe, On-Site suppressed the subject landlord-tenant action from Plaintiff's report, and emailed River Pointe the updated Final Report as edited by Plaintiff's own information. [Davidson Decl. ¶ 52; Caskey Decl. ¶ 9; Exb. 3].

The rental report upon which River Pointe relied in its determination of whether to rent to Plaintiff did not contain the subject court record. [Davidson Decl. ¶ 53; Caskey Decl. ¶ 10; Exb. 3, (Page 2 stating "There were no previous Landlord Tenant Court records found.")].

River Pointe's own internal score that it calculated for Plaintiff, based entirely on its own criteria, indicates that he failed to meet the following minimum qualifications to be eligible to rent at River Pointe: (a) Total monthly income to rent ratio exceeds 3.0; (b) Gross monthly income after rent and estimated debt exceeds 40.0% of the monthly income; and (c) Maximum percentage of past due negative accounts is less than 25.0%. [Davidson Decl. ¶ 54, Exb. 3; Caskey Decl. ¶ 11]. Notably, the report indicates that Plaintiff passed the qualification for "No Landlord Tenant Court records or unpaid landlord collections in the last 7 years."   [Davidson Decl. ¶ 55, Caskey Decl. ¶ 11; Exb. 3]. Further, in July 2015, River Pointe informed Plaintiff that he was not declined based on a landlord tenant record. [Caskey Decl. ¶ 12]. Rather, River Pointe expressly informed Plaintiff that the key factors that adversely affected his River Pointe rental score were: his income was not high enough to qualify; that he had a high debt-to-income ratio, and that he had a poor credit history. [Caskey Decl. ¶¶ 12-13].

As such, and contrary to the allegations in the FAC, Plaintiff was not denied housing as a result of any inaccurate or incomplete information in his Final Report regarding a report of a "civil action for possession": Such information is not in the Final Report relied upon by River Pointe to

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

1  make its decision to decline Plaintiff's rental application, and the Final Report expressly states that he

2  had passed River Pointe's public record criterion. [Davidson Decl. ¶ 56; Caskey Decl. ¶ 11; Exb. 3].

3  Additionally, the Final Report memorializes on the first page in River Pointe's own summary that

4  Plaintiff was actually denied housing based upon information he submitted to River Pointe himself,

5  not information from On-Site; *to wit,* Plaintiff's self-reported income was not high enough to qualify

6  for the particular apartment for which he was applying. [Caskey Decl. ¶ 14; Davidson Decl. ¶ 57;

7  Exb. 3].

8      River Pointe emailed Plaintiff a copy of the Final Report on which its decision was based on

9  July 25, 2015. That report, dated June 9, 2015, did not include the landlord tenant record about which

10 Plaintiff complains. [Caskey Decl. ¶ 13; Davidson Decl. ¶ 58].

11     Since June 2015 through the present, no other landlord has requested a report from On-Site

12 related to Plaintiff. [Davidson Decl. ¶ 59]. Additionally, prior to preparing the Preliminary Report,

13 On-Site had not received any prior disputes or other information indicating that the LexisNexis case

14 record was not associated with Plaintiff. [Davidson Decl. ¶ 60]. After the receipt of the information

15 forwarded by River Pointe, On-Site tagged the landlord-tenant record to prevent it from reappearing

16 on any future reports. [Davidson Decl. ¶ 61].

17 **3.  LEGAL STANDARD FOR SUMMARY JUDGMENT**

18     Summary judgment is appropriate where the record, read in the light most favorable to the

19 nonmoving party, indicates "there is no genuine dispute as to any material fact and the movant is

20 entitled to judgment as a matter of law." [*Fed. R. Civ. P.*, Rule 56(a); *Celotex Corp. v. Catrett*, 477

21 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)]. In deciding a motion for summary

22 judgment, courts believe the nonmovant's evidence and draw all justifiable inferences in the

23 nonmovant's favor. [*Id.* at 269]. The burden is initially on the moving party to demonstrate the

24 absence of a genuine dispute of material fact. [*Celotex*, 477 U.S. at 322-23]. If the moving party

25 meets its burden, the nonmoving party must produce enough evidence to rebut the moving party's

26 claim and create a genuine dispute of material fact. [*Id*]. If the nonmoving party meets this burden,

27 summary judgment is inappropriate. [*Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099,

28 1103 (9th Cir. 2000)].

However, "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed." [*Fed. R. Civ. P.*, Rule 56(e)(2)]. Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." [*Celotex Corp.*, 477 U.S. at 322]. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion. [*See In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor")].

## 4.   ARGUMENT

### A.   ON-SITE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION FOR VIOLATION OF FCRA AS A MATTER OF LAW.

#### 1)   FCRA Legal Framework

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." [*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)]. "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." [*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (citing 15 USC §§ 1681o & 1681n) (citations omitted)]. The duty at issue in this case is imposed by 15 USC § 1681e(b), which provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." [15 USC § 1681e(b)].

To prevail on a *negligence* claim under this provision, a plaintiff must establish that: (1) the CRA reported inaccurate information about the plaintiff; (2) the CRA was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (3) the plaintiff was injured; and (4) the CRA's negligence caused the plaintiff's injury. [*Gorman v. Experian Info. Sols., Inc.*, No. 07 Civ. 1846 (RPP), 2008 U.S. Dist. LEXIS 94083, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008) (citing *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y.

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

1994))]. Thus, succinctly stated, the elements of a negligence claim are (1) inaccuracy, (2) failure to follow reasonable procedures, (3) actual damages, and (4) causation. A plaintiff who prevails on a negligence claim is entitled to actual damages and costs. [*See* 15 USC § 1681o].

By contrast, a plaintiff who prevails on a willfulness claim is entitled to (1) either actual damages *or* statutory damages between $100 and $1,000; (2) punitive damages; and (3) costs. [*See* 15 USC § 1681n; *Northrop v. Hoffman of Simsbury, Inc.*, 12 F. App'x 44, 50 (2d Cir. 2001) (summary order) ("Actual damages are not a statutory prerequisite to punitive damages."). Thus, the elements of a willfulness claim are (1) inaccuracy and (2) a failure to follow reasonable procedures that is (3) knowing or reckless. [*See Safeco*, 551 U.S. at 57-58 ("willfulness" in FCRA encompasses both knowing and reckless violations)].

### 2) There Is No Liability For Inaccuracies In A Consumer Report If A CRA Follows Reasonable Procedures To Assure Maximum Possible Accuracy.

"Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." [*Guimond v. Trans Union Credit Info., Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Bryant v. TRW, Inc.*, 689 F.2d 72, 77 (6th Cir. 1982); *Thompson v. San Antonio Retail Merch. Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982); *Ladner v. Equifax Credit Information Servs.*, 828 F. Supp. 427, 430 (S.D. Miss. 1993); *Boothe v. TRW Credit Data*, 768 F. Supp. 434, 437 (S.D.N.Y. 1991)]. "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." [*Id.* citing *Cahlin*, 936 F.2d at 1156]. FCRA does not impose strict liability, however - an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures. [*Baker v. Experian Info. Solutions, Inc.*, 2015 U.S. Dist. LEXIS 82845, at *10-11 (C.D.Cal. June 22, 2015)]. Specifically, FCRA does not require On-Site to guarantee 100% accuracy. [*Miller v. TransUnion, LLC*, 2013 U.S. Dist. LEXIS 140851 (M.D. Pa. Aug. 14, 2013) ("The FCRA does not . . . make these services guarantors of the perfect accuracy of the data they collect."); *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 489, 498 (D.N.J. 2010) ("A [defendant's] obligation under the [FCRA] is to employ reasonable

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

procedures, not perfect ones.") (quoting *Anderson v. Trans Union LLC,* 367 F.Supp.2d 1225, 1236 (W.D. Wis. 2005))]. The Commentary of the Federal Trade Commission to FCRA, 16 C.F.R. pt. 600, app., section 607 at 3.A, states that the section does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures. [*Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004)].

Here, Plaintiff's claim under 15 USC § 1681e(b) fails as a matter of law because: Plaintiff has no evidence that On-Site lacks reasonable procedures to assure maximum possible accuracy or failed to follow such procedures; and because resellers are deemed as a matter of law to have reasonable procedures when the consumer data is from a reputable source and the report does not contain any patent errors on the face of the subject consumer report. [See *Baker v. Experian Info. Solutions, Inc.*, No. 14-cv-1011, 2015 U.S. Dist. LEXIS 82845 *13-14 (C.D. Cal. June 22, 2015)].

## B. PLAINTIFF CANNOT SHOW ON-SITE FAILED TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY, THUS ENTITLING ON-SITE TO JUDGMENT AS A MATTER OF LAW.

To begin, it is Plaintiff's burden to show exactly what On-Site's procedures are to assure maximum possible accuracy, and either present evidence as to why they are unreasonable or that they are reasonable but not followed. [*Dalton v. Capital Associated Indus.*, 257 F.3d 409, 416 (4th Cir. 2001) ("the plaintiff bears the burden under § 1681e(b) to show that the consumer reporting agency did not follow reasonable procedures.")].

Here, Plaintiff has designated no witnesses competent to testify about the reasonableness of On-Site's procedures, failed to authenticate a single document, failed to properly notice or take a single deposition, and has failed to designate any expert witness to opine on the subject or counter On-Site's expert report that opines On-Site's procedures to assure maximum possible accuracy are more than reasonable. [Saltz Decl. ¶ 6, Kuehn Decl. ¶ 10, Report].

Thus, Plaintiff cannot meet his burden to establish that the information that On-Site received from LexisNexis regarding the subject "Civil Action for Possession" that was disclosed in the

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

Preliminary Report is the result of a lack of following a reasonable procedure.  As such Summary

Judgment should be granted for Defendant On-Site.

### C. ON-SITE'S PROCEDURES AS A RESELLER OF CONSUMER INFORMATION TO ASSURE MAXIMUM POSSIBLE ACCURACY ARE REASONABLE AS A MATTER OF LAW PURSUANT TO THE UNDISPUTED FACTS OF THIS CASE.

#### 1) The Standard of What is a "Reasonable Procedure" is Different for Reseller CRAs Than it is for Non-Reseller CRAs.

As stated above, although it is true that On-Site is a CRA under FCRA, it is also true that On-Site is expressly a reseller of other CRAs' information under FCRA pursuant to 15 USC § 1681a(u). [Davidson Decl. ¶ 5]. As such, the procedures that can be *reasonably* employed by a reseller are vastly different than the reasonable procedures a Non-Reseller CRA ("NCRA") that stores and evaluates its own data can adopt.

Specifically, Plaintiff's sole FCRA claim alleges that On-Site violated 15 USC § 1681e(b), which requires that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." [15 USC § 1681e(b)]. On-Site does not dispute that, as a reseller, it is a CRA. Nor does On-Site dispute that it assembled, merged, and furnished the Preliminary Report containing information from its NCRA vendors. However, a "reseller" is a distinctly defined subset of CRA that, by definition, "assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party," and which does not "maintain a database of the assembled and merged information from which new consumer reports are produced." [15 USC § 1681a(u)]. Hence, in view of these limitations, a reseller's role is to assemble and merge information already evaluated by the NCRAs to belong to a particular consumer.

Plaintiff does not (and cannot) dispute that On-Site accurately assembled and merged into its Preliminary Report the information furnished to it by LexisNexis. [Davidson Decl. ¶ 12]. Rather, Plaintiff's entire theory of the case appears to be that On-Site does not follow reasonable procedures to assure maximum possible accuracy solely because information purportedly not belonging to him appeared in the Preliminary Report. [See FAC ¶ 18]. But, as stated above, that is not the proper

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

standard to establish liability under § 1681e(b) as to any CRA, let alone a reseller.

Specifically, a reseller designation is a distinction with a difference when it comes to establishing *reasonable* procedures to assure maximum possible accuracy. Under well-accepted principles of statutory construction and interpretation, a clear delineation is drawn between the

| Consumer Reporting Agencies Generally | Reseller CRA Subset |
|---|---|
| "The term [CRA] means any person which . . . regularly engages in whole or in part in the practice of | "The term 'reseller' means a consumer reporting agency that |
| A. assembling or evaluating | A. assembles and merge |
| B. consumer credit information or other information on consumers | B. information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer |
| C. for the purpose of furnishing consumer reports to third parties." 15 USC § 1681a(f). | C. for purpose of furnishing such information to any third party . . . ." 15 USC § 1681a(u). |

functions of a CRA, such as Experian or Equifax, and the duties owed to a consumer by a reseller, which is a defined subset of CRA:

The above illustrates the key limitation placed on a reseller – a reseller, unlike NCRAs – does not evaluate credit information. It only assembles and merges such information. While both NCRAs and resellers assemble information, NCRAs "evaluate" information, whereas a reseller only "merges" that information. The distinction between "merging" and "evaluating" is significant, as the process of "evaluating" consumer credit information necessarily involves judgment over the use or inclusion of such credit information when preparing a consumer report. [FTC, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations 29, § 603(f) at 3B[1] ("'Evaluating' means appraising, assessing, determining or making a judgment on such information.")]. Thus, FCRA specifically contemplates that the NCRA, when preparing a consumer report, will evaluate the data it obtains to determine if credit information relates to a specific

---

[1] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

consumer ("matching"), all while using reasonable procedures to assure maximum possible accuracy. [15 USC § 1681a(f)]. The term "evaluating" is conspicuously absent from FCRA's definition of reseller. Thus, FCRA does not contemplate that a reseller will evaluate (i.e., match) data to tie it to a particular consumer.

In accordance with its FCRA-defined role, a reseller simply "assembles and merges" the information already-evaluated by the NCRA. [15 USC § 1681a(u)]. A reseller plays no role in determining whether the NCRA properly determined that certain credit information relates to a specific consumer, nor would it be reasonable to expect a reseller to do so because the reseller is not privy to the original information provided to the NCRA by a furnisher of information that caused the NCRA to "match" data to a particular consumer.

Indeed, a review of the remainder of FCRA's provisions relating to resellers confirms the practical reality that a reseller is not in a position to question and investigate the matching "judgment" made by the NCRA. NCRAs and resellers have different responsibilities when it comes to maintaining and accessing consumer information. While all CRAs (including resellers) "assemble," the sources of information available to them are markedly different. As the definition of a consumer reporting agency makes clear, to prepare a consumer report, it first gathers, collects, or brings together consumer credit information from a variety of sources. [FTC, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations 29, § 603(f) at 3B].[2] These sources include furnishers such as banks, lenders, and retailers; courts and public records; and information provided by consumers themselves. [*Id*].

Unlike a NCRA, a reseller, by definition, does not have these relationships or points of contact. [*See, e.g.*, Testimony of Timothy J. Muris, Chair, Federal Trade Commission, Before the Senate Banking Committee (July 10, 2003)[3] ("[T]he creditor has no relationship with the reseller")]. Rather, a reseller's only source is "information contained in the database of another consumer

---

[2] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf

[3] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fair-credit-reporting-act/fcrasenatetest.pdf

reporting agency," i.e., a consumer report that has already been prepared by a NCRA. [15 USC § 1681a(u)]. FCRA goes further in clarifying that a reseller by definition does not "maintain a database of the assembled or merged information from which new consumer reports are produced." [15 USC § 1681a(u)].

Additionally, FCRA is clear in its mandate that resellers are not required to investigate decisions made by NCRAs. FCRA's goal of accuracy is not just accomplished by § 1681e(b), but also by FCRA's provisions allowing consumers to dispute information. [15 USC § 1681i].

Specifically, subsection (f) exempts resellers from most requirements of 15 USC § 1681i. Instead, when a dispute concerns the acts or omissions of the NCRA (i.e., matching), a reseller's only duty is to convey notice of the dispute to "each consumer reporting agency that provided the reseller with the information." [15 USC § 1681i(f)(2)(B)(ii)]. As reflected in the facts above, it is undisputed that the alleged errors did not originate with On-Site, but LexisNexis. Thus, even when Plaintiff disputes the LexisNexis information with On-Site, On-Site's only obligation would have been to notify LexisNexis of the dispute. [15 USC § 1681i(f)(2)(B)(ii)].

If a reseller is not required to investigate a NCRA's judgment on whether certain consumer data relates to the consumer under § 1681i after being contacted by the consumer, then it is absurd to argue that a reseller would otherwise be required to do so under § 1681e(b), without ever being contacted by the consumer to provide the reseller with prior notice of the incorrect information.

### 2) On-Site Has and Follows Reasonable Procedures as a Reseller to Assure Maximum Possible Accuracy in the Reporting of Information it Obtains from NCRAs.

Against this legal backdrop, On-Site, as a reseller, uses reasonable procedures to accurately assemble and merge the information that is provided by its sources – the NCRAs – into its reports, thereby satisfying its burden under § 1681e(b).

As stated above, On-Site vets all of its vendors for accuracy before On-Site uses a particular NCRA or data supplier in the first instance, and then continuously vets its vendors for accuracy and quality of data throughout its relationship with its vendors. [Davidson Decl. ¶ 9].

Further, On-Site uses an automated process to receive consumer identifying information from its customers and transmits that same information directly to its NCRA vendors with a request for

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

1   consumer information relating to the identified consumer. [Davidson Decl. ¶10]. This process ensures

2   that the consumer identifying information is transmitted to the NCRAs without modification.

3   [Davidson Decl., ¶ 10].

4          Once On-Site receives the requested information from the NCRAs, it merges the NCRA's

5   information into a Report pursuant to a proprietary process. [Davidson Decl. ¶ 11]. On-Site employs

6   numerous measures to assure that it is accurately assembling and merging the data received from the

7   NCRAs, including data validation audits to assure that no discrepancies exist between the data

8   provided by NCRAs and the fields of data expected by On-Site's customers. [Davidson Decl., ¶ 11].

9          On-Site followed this process with respect to the LexisNexis information it received that was

10   noted in the Preliminary Report. [Davidson Decl. ¶ 12]. There is no dispute that On-Site accurately

11   assembled and merged the information received from LexisNexis pursuant to its procedures.

12          What is more, it is beyond dispute that On-Site's reliance upon LexisNexis' matching the

13   subject public record to Plaintiff was entirely reasonable under the circumstances:

14          The search algorithm used by LexisNexis to identify potentially relevant public records is a

15   name-based search that locates records based on name variations, nicknames, and phonetically

16   similar names (such as Smith and Smyth) with a defined geographic area. [Davidson Decl. ¶ 32].  In

17   this case, the match algorithm identified a record belonging to "Michael Johnson" (same spelling) in

18   Sacramento, California as potentially relevant to the Plaintiff Michael Johnson, whose application

19   indicated that he lived in West Sacramento, California.  [Davidson Decl. ¶ 33; Exb. 3].

20          In searching for potentially relevant public records, it is a generally accepted practice to

21   search using name and geographic area to identify possible matches. [Davidson Decl. ¶ 34; Kuehn

22   Report]. Eviction records rarely, if ever, contain any personal identifiers such as social security

23   number, date of birth, or biometric information.  [Davidson Decl. ¶ 35; Exb. 4; Kuehn Decl. ¶ 10,

24   Report]. The records were matched based on the same name and geographic area – which in this

25   instance was narrowed down to the same street as Plaintiff's prior address. [Davidson Decl. ¶ 35].

26   The identification of the Sacramento, California landlord tenant record as potentially relevant is

27   consistent with industry standards and practice. [Davidson Decl. ¶ 36; Kuehn Decl. ¶ 10, Report].

28

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel: 310.446.9900 • Fax 310.446.9909

Further, it was within industry standards and practice for On-Site to rely on the data provided by LexisNexis, particularly where, as here, the data contains no obvious errors or inconsistencies. [Davidson Decl. ¶ 37a; Kuehn Decl. ¶ 10, Report,].   On-Site had no prior knowledge that the information returned by LexisNexis was not related to Plaintiff. [Davidson Decl. ¶ 37b]. A comparison of the landlord-tenant record reflected on the Preliminary Report and the underlying court records demonstrates that the entry on the report accurately reflected the public record. [Davidson Decl. ¶ 37c; Exbs. 1, 4; Kuehn Decl. ¶ 10, Report].   Further the landlord tenant record also was consistent with the collection record reported about the Plaintiff by Equifax – both records involved the same property company, LeFever. [Davidson Decl. ¶ 37b; Exb. 1; Kuehn Decl. ¶ 10, Report]. Finally, Plaintiff failed to provide On-Site with his prior address on Hurley Way prior to the Preliminary Report being created in order to put On-Site on notice that the public record differed in street and unit number from Plaintiff's later-admitted prior residence. [Davidson Decl. ¶ 37e; Exb. 1].

Therefore, as On-Site has reasonable procedures as a reseller to assure maximum possible accuracy and followed them in this case, Plaintiff can put forth no evidence to meet his burden establishing the contrary.

### 3) Under the Undisputed Facts of This Case, On-Site's Procedures to Assure Maximum Possible Accuracy as a Reseller Have Been Deemed to Be Reasonable As a Matter of Law.

Recent case law has found that a reseller that only assembles and transmits consumer data from other NCRAs that is not on its face obviously inaccurate, and has reasonable procedures to assure maximum possible accuracy as a matter law, is entitled to summary judgment in its favor.

Specifically, in *Baker v. Experian Info. Solutions, Inc.*, No. 14-cv-1011, 2015 U.S. Dist. LEXIS 82845 (C.D. Cal. June 22, 2015), plaintiff Danny Baker alleged that when he applied for a loan, the lender obtained tri-merge reports from Credco, which contained accurate data from Equifax and Trans Union, but inaccurate data from Experian.  Specifically, he alleged that Experian's reports listed a number of his late father's debts as pertaining to him, and that by repeating this, Credco's tri-merge report prevented him from getting credit.  [*Id*. at *5-8].

The *Baker* Court found that a reseller has reasonable procedures as a matter of law when the reseller accurately passes through information from a NCRA that does not have patent errors on the

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

face of the report itself. [*Id* at 11-14 ("Although the reasonableness of the procedures will be a jury question in the 'overwhelming majority of cases,' it is not the case here.")].

The *Baker* Court held: "Defendant takes the information it receives and passes it to the party that requests the information. According to the evidence presented, Defendant does not add any information. The Ninth Circuit in *Guimond* stated that a party can escape liability when it reports inaccurate information if it follows reasonable procedures. In this instance, **the procedures were reasonable as a matter of law**." [*Id* at \*12 (*emph. added*)].

The *Baker* Court stated: "The Court's reasoning is influenced by the fact that Defendant acts in an intermediary role, that the type of information reported by Experian does not by its existence show inaccuracy, and that FCRA does 'not impose strict liability.' The evidence Defendant provided shows that its procedures are reasonable here." [*Id.* at \*13].

The *Baker* Court noted all the cases cited by the Plaintiff arguing that the reasonableness of a reseller's procedures were a question for a jury were not applicable. The Court stated: "the Court is not persuaded by these cases in that in these cases there was a 'patent error,' or stated otherwise, the reports were 'incorrect on their face' apparent to the viewer." [*Id.* at \*13].  As such the Baker Court held: "The actions taken by Defendant were reasonable in this instance. There are no genuine issues of material fact and the Court finds that the very specific factual details of the information reported, the lack of a direct conflict with other reports, Defendant's role as an intermediary, and Plaintiff's name being exactly like his fathers all favor finding **<u>reasonable procedures were not lacking as a matter of law</u>**." [*Id.* at \*13-14 (*emph. added*)].

As the facts in this case are even more direct than those in *Baker,* On-Site's procedures as a reseller to assure maximum possible accuracy are reasonable as a matter of law, and therefore On-Site is entitled to summary judgment as a matter of law.

### 4)  On-Site Is Entitled To Judgment As A Matter of Law Because Plaintiff Has No Evidence To Declare LexisNexis As A Disreputable Source For Public Record Information.

The reasonableness of On-Site's procedures, even as a regular CRA, is further underscored by the fact that the data at issue came from an infinitely reliable source – LexisNexis. The information transmitted by LexisNexis did not appear unreliable on its face. Instead, the Preliminary Report

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

1    contained numerous indicia of its accuracy, which is consistent with On-Site's very low dispute

2    volume with respect to information received from LexisNexis – 0.3%. [Davidson Decl. ¶¶ 22-24]. As

3    a reseller, On-Site was also unaware of any of the issues that Plaintiff raised until after the

4    Preliminary Report was created. [Davidson Decl. ¶ 60]. Thus, summary judgment is warranted.

5          As stated above, reasonable procedures do not require absolute accuracy, and FCRA does not

6    impose liability anytime a report contains an inaccuracy. "While the FCRA requires 'maximum

7    possible accuracy,' it does not subject reporting agencies to strict liability. Instead, the agencies are

8    obligated to follow 'reasonable procedures' to ensure that reports accurately reflect

9    creditworthiness." [*Dennis v. BEH-1, LLC*, 485 F.3d 443, 446 (9th Cir. 2007)].

10         Against this standard, it is well established that a CRA is entitled to presume that information

11    provided from an established furnisher is accurate. [*Henson v. CSC Credit Services*, 29 F.3d 280, 284

12    (7th Cir. 1994); *Serfess v. Equifax Credit Info. Servs.*, No. 13-406, 2014 U.S. Dist. LEXIS 120138, at

13    \*18 (D.N.J. Aug. 28, 2014) (finding "reliance upon [information provided by] Bank of America is

14    reasonable" where plaintiff did not show that the furnisher was unreliable); *see also* 16 C.F.R. pt.

15    607(3)(D) (Section 1681e(b) does "not hold a consumer reporting agency responsible where an item

16    of information that it receives from a source that it reasonably believes to be reputable appears

17    credible on its face, and is transcribed, stored and communicated as provided by that source")].

18         For example, a CRA is not liable for reporting inaccurate information gathered from a court's

19    judgment docket so long as it did not have prior notice that the information might be inaccurate.

20    [*Henson*, 29 F.3d at 285-86]. Federal courts also have applied the reasoning of *Henson* to the

21    relationships between furnishers and CRAs: "Although Henson involved information obtained from

22    court records, the holding seems equally applicable to reports from [furnishers], who have both a

23    contractual agreement and built-in incentives to be accurate in their reporting, if only to continue

24    their ongoing relationship with the credit reporting agency." [*Anderson v. Trans Union, LLC*, 345 F.

25    Supp. 2d 963, 972 (W.D. Wisc. 2004)]. A reseller is entitled to the same presumption – that the

26    information it receives from its furnishers (the NCRAs) is accurate. This is particularly true where, as

27    here, On-Site had no way to determine whether any information LexisNexis provided was inaccurate.

28         The NCRAs thus have a "built-in incentive" to supply resellers, like On-Site, with accurate

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909

1    information, even greater than the incentive imposed on furnishers. [See *Anderson*, 345 F. Supp. 2d

2    963]. Given this greater likelihood of reliability, a reseller should be able to rely on NCRAs unless

3    (1) a plaintiff shows that the NCRAs did not use reasonable procedures to assure maximum possible

4    accuracy; and (2) the reseller knew the information furnished by the NCRA was inaccurate.

5    With these principles in mind, and based on the undisputed facts before the Court, Plaintiff

6    cannot establish that On-Site acted unreasonably in relying on the information sent to it by

7    LexisNexis.  To be certain, there is no evidence that On-Site knew or had reason to know that the

8    information returned by LexisNexis was inaccurate or otherwise unreliable. More importantly,

9    Plaintiff has no evidence or any witnesses competent to testify that LexisNexis is not a reputable

10   source for public records upon which any ordinary person may confidently rely.[4]

11   Based on these facts, summary judgment should be granted. [*Sarver*, 390 F.3d at 972 (the

12   FCRA "does not hold a reporting agency responsible where an item of information, received from a

13   source that it reasonably believes is reputable, turns out to be inaccurate . . . ."); also see *Saenz v.*

14   *Trans Union, LLC*, 621 F. Supp. 2d 1074, 1081 (D. Or. 2007) ("If a consumer reporting agency

15   accurately transcribes, stores and communicates consumer information received from a source that it

16   reasonably believes to be reputable, and which is credible on its face, the agency does not violate [§

17   1681e(b)] simply by reporting an item of information that turns out to be inaccurate." (citing 16

18   C.F.R. 600, § 607(b)(3)(A))].

19   ### 5)    Plaintiff Cannot Establish He Suffered Any Damages As A Direct Result Of On-Site's Conduct.

20   Under FCRA, to create an issue of fact as to causation, a plaintiff must produce evidence that

21   an alleged inaccurate entry in a credit report was a substantial factor in the denial of credit, adverse

22   credit, or other harm.  [*Hauser v. Equifax, Inc.*, 602 F.2d 811, 816 (8th Cir. 1979); *Cahlin v. Gen.*

23   *Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Messano v. Experian Info.*

24

25   _____

26   [4] LexisNexis is so reliable with regard to its ability to accurately report court case information that it has been named the Official Case Law Reporter of the State of California.

27   [See http://www.lexisnexis.com/clients/CACourts/].

28

File No.:  5.385.011
Case No. Case No.: 5:15-CV-04409          21

*Solutions, Inc.* (N.D.Cal. May 8, 2017, No. 16-cv-05697-HSG) 2017 U.S.Dist.LEXIS 70111, at *13-14 ("the plaintiff must plead and prove actual damages from the defendant's violation of the FCRA")].

"Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of "actual damages," *Philbin v. Trans Union Corp.,* 101 F.3d 957, 963 (3d Cir. 1996); *Casella v. Equifax Credit Information Service,* 56 F.3d 469, 473 (2d Cir. 1995); *Cahlin,* 936 F.2d at 1160-61 (11th Cir. 1991), which is one of the remedies under the Fair Credit Reporting Act." [*Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir. 2001)].

Plaintiff claims here that, as a result of On-Site reporting inaccurate "civil action for possession" information, Plaintiff was denied housing at River Pointe and elsewhere, suffered harm to his reputation, and suffered emotional distress. [FAC ¶¶ 10-11]. Plaintiff cannot provide any evidence to support his claims for damages for the following reasons:

### a.   Lost Housing Opportunities:

As stated above, River Pointe did not deny Plaintiff housing based upon any "civil action for possession." [Caskey Decl. ¶ 12].   Rather, River Pointe expressly told Plaintiff that he was denied housing because his self-reported income was too low. [Caskey Decl. ¶ 12; Exb. 3]. This is confirmed by the fact that the Final Report identifies exactly why it is that Plaintiff was denied housing, which also shows that Plaintiff passed the section regarding landlord-tenant cases. [Davidson Decl. ¶¶ 55-56, Caskey Decl. ¶¶ 10-11; Exb. 3]. Thus, Plaintiff cannot claim actual damages in this case. [See *Reed v. Experian Info. Solutions, Inc.*, 321 F.Supp.2d 1109, 1114 (D. Minn. 2004) (erroneous notation on credit report could not have been a substantial factor in plaintiff's denial of credit because plaintiff's application was denied for other reasons)].

Moreover, it is undisputed that Plaintiff's claimed inaccuracy was not even in the Final Report upon which River Pointe relied. [Davidson Decl. ¶ 52; Caskey Decl. ¶ 13, Exb. 3]. Thus, the subject inaccuracy at issue played no part in causing any harm to Plaintiff.

Additionally, it is undisputed that On-Site has issued no other tenant-screening reports regarding Plaintiff to anyone else. [Davidson Decl. ¶ 59].  Thus, On-Site cannot be the cause of any other rental application denials that Plaintiff may have suffered.

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

### b.  Harm To Reputation:

Plaintiff claims that his reputation was harmed. However, Plaintiff has no evidence or witnesses to testify that his reputation was harmed or diminished in anyway.

To be certain, the purpose of the Preliminary Report was to share the data that On-Site receives from its vendor CRAs with the rental applicant so that the rental applicant can make sure that the data is accurate before it is put into a Final Report and thus make sure no harm comes therefrom.  [Davidson Decl. ¶¶ 15-18].  As such, Plaintiff cannot show that he suffered any loss of reputation as a result of anything done by On-Site.

### c.  Emotional Distress Damages:

Finally, because the Final Report here contained no inaccuracies, and because Plaintiff suffered no adverse action as a result of anything in the Preliminary Report, but rather was denied housing based upon the fact that his income was too low, demonstrates that Plaintiff cannot establish that he suffered emotional distress as a result of any action taken by On-Site.

To be certain, a plaintiff's emotional damages must be "demonstrable," as otherwise there is a risk that claims for emotional distress will be "fictitious and trivial." [*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 241 (4th Cir. 2009) (quoting *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007))]. Plaintiffs who rely on their own testimony must "explain their injury in reasonable detail and not rely on conclusory statements." [*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1182 (10th Cir. 2013) (quoting *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006)) (alteration omitted)].

Plaintiff cannot possibly put forward a record of any emotional distress under the aforementioned undisputed facts. The subject public record was reflected only on a Preliminary Report that was not relied upon by anyone and the speed within which On-Site corrected the report once it received the information forwarded by River Pointe greatly reduced the possibility that Plaintiff would suffer any harm as a result of the subject landlord tenant record.

Therefore, because Plaintiff cannot establish that he suffered any damage caused by On-Site, On-Site is entitled to Judgment as a matter of law.

### D.  PLAINTIFF CANNOT PRESENT ANY EVIDENCE THAT ON-SITE WILLFULLY VIOLATED FCRA.

In addition to asserting a negligent violation of FCRA, Plaintiff also contends (without any factual support) that On-Site "willfully" violated § 1681e(b). [See FAC ¶ 18]. In order for liability to attach under 15 USC § 1681n for willful noncompliance, a reporting agency must act knowingly or recklessly in violation of the law. [*Safeco Ins. Co. of Am. v. Burr*, *supra,* 551 U.S. 47, 70 (2007); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998)].  Proof of a willful violation of FCRA requires more than a showing of a mere inaccuracy on a consumer report. [*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (citations omitted)]. In order to demonstrate willful noncompliance under FCRA, Plaintiff must demonstrate, at a minimum, recklessness with proof of "conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." [*Id*]. Plaintiff cannot do so for at least three reasons.

First, in light of the foregoing statutory and other authority, On-Site's position is not "objectively unreasonable." In fact, to establish such a conclusion under *Safeco*, Plaintiff is required to identify authoritative FTC or Ninth Circuit <u>Appellate</u> guidance to the contrary. Yet, no such authority exists. [See *Safeco*, 551 U.S. at 70 (finding a lack of any willful violation because this was "not a case in which the business subject to the Act had the benefit of guidance from **the courts of appeals** or the Federal Trade Commission that might have warned it away from the view it took.")].

Second, the undisputed facts of this case demonstrate that On-Site was entitled to reasonably rely on the accuracy of the information being reported by LexisNexis. That conclusion is underscored by the lack of any prior disputes by Plaintiff as to the data at issue, as well as due to the exceptionally low percentage of disputes (0.3%) generated by On-Site's business activities with LexisNexis. [Davidson Decl. ¶¶ 22-24]. It is also substantiated by the decision in *Baker* finding that the conduct in which On-Site engaged is reasonable as a matter of law.  [See *Baker v. Experian Info. Solutions, Inc.*, No. 14-cv-1011, 2015 U.S. Dist. LEXIS 82845 *13-14 (C.D. Cal. June 22, 2015)].

Finally, On-Site's policy of sharing the Preliminary Report with Plaintiff to make sure Plaintiff has input in making certain the Final Report contains no inaccuracies in order to protect Plaintiff from suffering any damage as a result of a third-party's data not under On-Site's control belies any claim that On-Site was willfully violating FCRA. In fact, such facts make it impossible for

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California  90067
Tel. 310.446.9900 • Fax 310.446.9909

Plaintiff to present any evidence that On-Site violated FCRA at all, let alone willfully.

As there is a total lack of probative evidence of any willful violation, On-Site is entitled to summary judgment on that claim. [See, e.g., *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 241 (4th Cir. 2009) ("[E]vidence that Equifax acted willfully is wholly lacking. Accordingly, Robinson's argument is without merit.").

### E.  PLAINTIFF'S CCRAA CLAIMS FAIL ALONG WITH HIS FCRA CLAIMS.

Plaintiff is also suing On-Site for a violation of CCRAA under *Cal Civ. Code* § 1785.14(b), which states: "Whenever a consumer credit reporting agency prepares a consumer credit report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. [*Cal Civ. Code* § 1785.14(b)].

Section 1681e(b) of FCRA and Section 1785.14(b) of CCRAA are "virtually identical". [*Schoendorf v. U.D. Registry, Inc.*, 97 Cal. App. 4th 227, 238 (2002); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1335 (9th Cir. 1995)].

"[B]ecause the CCRAA 'is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.'" *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (citing *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3, 3 1 (2003))." [*Newfield v. City Nat'l Bank, NA*, 2017 U.S.Dist.LEXIS 46027, at *9 (C.D.Cal. Jan. 27, 2017)]. Thus, it is axiomatic that if Plaintiff cannot prevail on his FCRA claim, the same is true with regard to his CCRAA claim.

Therefore, based upon the foregoing, On-Site is entitled to Judgment as a matter of law as to Plaintiff's CCRAA claims.

### 5.  CONCLUSION

For the foregoing reasons, the Court should grant summary judgment for On-Site.

Dated: July 20, 2017            **JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP**


By: /s/ Michael J. Saltz
Michael J. Saltz, Esq.
Attorneys for Defendant ON-SITE MANAGER, INC.

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
1880 Century Park East, Suite 900
Los Angeles, California 90067
Tel. 310.446.9900 • Fax 310.446.9909